IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DENEISE FONDREN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. CV-00-B-2090-S |
| KIRKPATRICK CONCRETE CO., INC., | ) ) ) |
| Defendant. | ) ) |

**ENTERED**

MAR 14 2002

## MEMORANDUM OPINION

Currently before the court are defendant Kirkpatrick Concrete, Inc.'s ("Kirkpatrick" or "defendant") Motion for Summary Judgment and Motion to Strike certain affidavit testimony submitted by plaintiff. Deneise Fondren ("Fondren" or "plaintiff"), a former manager of the Building Materials division at Kirkpatrick Concrete, brings this action alleging that while interviewing for this position, Kirkpatrick suppressed certain facts from her that it had a duty to disclose. She also claims that Kirkpatrick discriminated against her on the basis of her gender with respect to her pay in violation Title VII of the Civil Rights Act of 1964.[1]

Upon consideration of the record, submissions of the parties, argument of counsel, and the relevant law, this court is of the opinion that defendant's Motion for Summary Judgment and defendant's Motion to Strike are due to be granted.

---

[1] Fondren also alleged claims of constructive discharge and discrimination as to "other terms and conditions of employment." (Complaint ¶ 12.) Those claims were dismissed by Order entered on August 28, 2000.

## I. FACTS

Fondren began her career in concrete and building material sales in 1990 when she worked at Marvin's Building Supply. (Fondren Dep. at 37.) She began as a cashier and was ultimately promoted to sales manager of building material contractor sales before she left the company in 1992.[2] (Fondren Dep. at 35-39.) She worked briefly with a homebuilder[3] before she began employment with Kirkpatrick in August 1993. (Fondren Dep. at 83.)

Kirkpatrick manufactures and sells ready-mix concrete and related building material products to commercial and residential contractors. Fondren sold concrete for Kirkpatrick until January 1997, when she resigned to sell concrete for a competitor, Ready Mix USA. (Fondren Dep. at 97-99, 110-12, 245.) While in concrete sales, Fondren also sold building materials and was, therefore, familiar with the Building Materials division. (Fondren Dep. at 99, 109-13.) When Fondren left Kirkpatrick in 1997, her annual salary was approximately $32,000. (Fondren Dep. at 111.) Fondren earned approximately $36,000 per year working at Ready Mix USA. (Fondren Dep. at 123.)

In the summer of 1998, Fondren and Sharon Harvill, Fondren's friend and Kirkpatrick's Vice President of Finance, met for lunch. (Fondren Dep. at 119, 298.) During their lunch, Harvill mentioned that Kirkpatrick did not have a Manager in its Building Materials division and that the company was beginning to interview for the position. (Fondren Dep. at 119.)[4] Fondren

---

[2] Fondren was terminated from Marvin's due to lack of profitability of her department and the lack of outside salespeople. (Fondren Dep. at 61-62.)

[3] Fondren left a position with Billingsly Homes by "mutual agreement" due to a down-turn in profits of the business. (Fondren Dep. at 77-78.)

[4] Kirkpatrick's Building Materials division sells concrete-related building materials, which constitute approximately 10% of Kirkpatrick's sales. (Weitman Dep. at 74-75.)

later called Harvill to tell her that she was interested in the Building Materials Manager position at Kirkpatrick. (Fondren Dep. at 121-22.) She asked Harvill to set up an interview with Jim Ford, the Sales Manager over the Concrete and Building Materials divisions. (*Id.*) Soon thereafter, Fondren met with Ford to discuss her interest in the position. (Fondren Dep. at 121.) Prior to this meeting, Fondren had never met Ford, and his position of Sales Manager did not exist when Fondren was previously employed by Kirkpatrick. (Fondren Dep. at 121-22; Goudie Aff. ¶ 4.)

Kirkpatrick actively recruited Fondren for the Building Materials Manager position because of the added benefit of her success in concrete sales. (Harvill Aff. ¶ 2.) At their meeting, Ford offered Fondren the position and told her that she could still sell concrete. (Fondren Dep. at 122-23.) He offered her a salary of $42,000 per year with the potential to earn bonuses. (Fondren Dep. at 125, 152, Ex 2; Goudie Aff. ¶ 4.) Specifically, Ford told Fondren that she would earn a bonus of two percent of her annual salary for every two thousand yards of concrete sold to new customers.[5] (Fondren Dep. at 125.) In addition, she was offered a potential bonus of three percent per quarter of her annual salary (or twelve percent per year) if a gross profit was made in the Building Materials division. (*Id.*) Fondren asked Ford what Kirkpatrick's sales looked like and he explained that any loss in one quarter would be make up at the other end. (Fondren Dep. at 126.) Fondren understood that the base salary with profits tied to sales would total between $53,000 and $60,000 annually. (Fondren Dep. at 281.) Fondren's compensation

---

[5] Although Fondren testified that Ford told her the concrete sales bonus would be 2% of her annual salary subject to her selling two thousand yards of concrete to new customers, Kirkpatrick's documentation of her compensation package reflects a potential bonus of 1%. (Fondren Dep. at 125, 134-135, 210, Ex. 2.) This discrepancy is immaterial as Fondren does not assert either a breach of contract or a fraud claim based upon the bonus for concrete sales. (*See* Complaint.)

3

offer also included a company car, health insurance, and retirement benefits. (Fondren Dep. at 125.) Fondren did not discuss the terms and conditions of the position or Kirkpatrick's offer with anyone from Kirkpatrick other than Ford. (Fondren Dep. at 121, 133.)

Fondren told Ford that she would think about Kirkpatrick's offer, and the meeting ended. (Fondren Dep. at 127.) Fondren decided she needed more time to think about the offer, and she asked Ford if she could have the weekend to think it over. (Fondren Dep. at 128.) He told her that the company needed an answer before the weekend. (Fondren Dep. at 129.) Fondren was under the impression that Kirkpatrick was afraid that she would not take the position. (*Id.*) She discussed the offer with her husband and thought it over more before she accepted the offer. (Fondren Dep. at 130-32.) Fondren recalls that her meeting with Ford was on Wednesday, and she accepted the offer by Ford's deadline on Friday. (Fondren Dep. 128-31.) Fondren resigned her job with Ready-Mix and began working as Kirkpatrick's Building Materials Manager on August 25, 1998. (Fondren Dep. at 245, 134-35.)

When Fondren began her new job, she immediately learned that Kirkpatrick no longer employed outside salespeople in building materials.[6] (Fondren Dep. at 194.) Fondren later learned that Kirkpatrick had in inventory about $90,000 of expired or slow-moving product that would have to be written off. (Fondren Dep. at 198-201.) In late 1999, she learned that Kirkpatrick was paying the salaries and car expenses for two concrete salespeople from the revenue generated by the Building Materials department. (Fondren Dep. 174, 177-82, 218-19.) Fondren complains that Kirkpatrick concealed these facts, which significantly affected the

---

[6] Fondren does admit, however, that those who principally sell concrete also sell some building materials. (Fondren Dep. at 177.) Sales for building materials were credited to the Building Materials division. (Fondren Dep. at 219.)

potential for profit by the Building Materials division. (Complaint ¶ 15.) Although Fondren now complains that Ford did not tell her during her interview that Kirkpatrick's Building Materials division had not been profitable for over a year, she admits that she did not ask. (Fondren Dep. at 195-96; Complaint ¶ 15.)

During her employment with Kirkpatrick, plaintiff learned that the company was paying her less than similarly situated male managerial employees. (Complaint ¶ 10.) Mike Griggs, Kirkpatrick's Building Materials Manager from 1992 until 1994 earned $50,000 annually. (Roy Aff. ¶3.) Keith Woolard was the Building Materials Manager from 1994 until 1997, earning a salary of $50,000 per year. (Roy Aff. ¶ 4.) Bill Roy, President of Kirkpatrick at the time, hired Griggs and Woolard and determined their salaries. (Roy ¶ 2, 4.) Roy based his determination of those salaries on the significant prior experience of each in managing and/or purchasing and selling concrete related building materials. (Roy ¶ 2, 4.)

Roy was no longer employed by Kirkpatrick when Fondren was hired as Building Materials Manager.[7] Jim Goudie was President of Kirkpatrick when Fondren was re-hired, and he was involved in setting Fondren's salary. (Goudie Aff. ¶ 2.) When setting her salary, Goudie considered that Fondren, in his opinion, had little prior management experience and no prior management experience in the concrete building materials industry. (Goudie Aff. ¶ 4.) He considered that Fondren was being re-hired at approximately $10,000 more than she had been paid as a Concrete Salesperson for Kirkpatrick less than two years earlier. (*Id.*) He also considered the new structure of the company, wherein another level of management was placed over the concrete sales and Building Materials divisions. (*Id.*) Unlike when Griggs and Woolard

---

[7] In fact, Roy was Fondren's boss at Ready Mix USA. (Fondren Dep. at 110.)

were Building Materials Managers, another level of management (a sales manager) was in place over the Concrete and Building Materials divisions so the Building Materials Manager no longer reported directly to the President. (*Id.*)

Fondren resigned from Kirkpatrick Concrete Company on April 7, 2000. (Fondren Dep. at 245.)

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed.R.Civ.P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view

the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only reasonable inferences. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Fraud

Fondren complains that Ford did not disclose certain information during the interview. She contends that Ford did not tell her that Kirkpatrick's Building Materials division had not been profitable for over a year, (Complaint ¶ 15; Fondren Dep. at 195); that there was not, and had not been for a period of time, an outside salesperson who sold building materials exclusively, (Complaint ¶ 15; Fondren Dep. at 194); that there was a significant amount of perishable inventory which had expired and which would have to be written off at some point, (Complaint ¶ 15; Fondren Dep. at 198-201); and that the salaries of two concrete salespeople were being charged to the Building Materials division rather than the Concrete Sales division. (Complaint ¶ 15; Fondren Dep. at 174, 177-182, 218-219.) She asserts that Ford had a duty to disclose these facts, and if he had, she would not have taken the job. (Complaint ¶ 17.)

*1. Suppression*

Accepting Fondren's allegations as true, she does not establish a claim of fraudulent suppression under Alabama law. To prove fraudulent suppression, plaintiff must show that: (1)

the defendant had a duty to disclose an existing material fact; (2) the defendant suppressed this material fact; (3) the defendant's suppression of this fact induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damages as a proximate result. *State Farm Fire and Casualty Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1999). The defendant can be liable for fraudulent suppression only if plaintiff proves that the defendant had knowledge of the material fact suppressed. *Owen*, 729 So. 2d at 839. A party's silence regarding a material fact is not actionable unless the party is under a duty to disclose the fact. *Id.* (citations omitted).

Whether one has a legal duty to disclose is a question of law for the court. *Id.* at 837. Judgment as a matter of law is appropriate if, accepting as true all of plaintiff's factual allegations, the judge determines that no duty was owed. *Id.* at 839. Specifically, the Alabama Supreme Court has held:

> [s]ilence is not actionable unless there is a confidential relationship or some special circumstance that imposes a duty to disclose. *Wilson [v. Brown*, 496 So. 2d 756 (Ala. 1986)]. Whether there is a duty to speak depends upon the fiduciary, or other relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case. Ala. Code 1975 § 6-5-102. **When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose arises when information is not requested.** *Norman v. Amoco Oil Co.*, 558 So. 2d 903 (Ala. 1990).

*Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So. 2d 238, 245-46 (Ala. 1992) (emphasis added). *See also* Ala. Code § 6-5-102 (1975). In evaluating whether there is a duty to speak, the court must consider a number of factors, including "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Owen*, 729 So. 2d at 842. (citing *Berkel & Co. Contractors, Inc. v. Providence*

8

*Hosp.*, 454 So. 2d 496 (Ala. 1984)).

Kirkpatrick was under no legal obligation to volunteer information to Fondren concerning the profitability of the Building Materials division or facts that might affect the division's profitability, absent Fondren's request for such information. *See Norman v. Amoco Oil Co.*, 558 So. 2d 903 (Ala. 1990) (holding that company had no duty to inform independent contractor of details of profitability index even though the renewal of his contract was based upon such index). Fondren asked Ford about Kirkpatrick's sales, and he explained that if her sales were off one month, she could make them up in the next month. (Fondren Dep. at 195-96.) Fondren admits that prior to accepting the position she never asked Ford, nor anyone else at Kirkpatrick, questions about the profitability of the Building Materials division, including whether the Division was or had been profitable, whether there were outside salespeople assigned exclusively to the division, whether the Division was carrying expired inventory, or what salaries were being charged to the Division. (Fondren Dep. at 194, 196, 208-210.) This case, therefore, does not involve the withholding of requested information.

Kirkpatrick's silence regarding the profitability of the Building Materials division is not actionable because there was no confidential or fiduciary relationship between Fondren and Kirkpatrick at the time of her discussion with Ford, and no special circumstances existed which would have created such a relationship. *Norman*, 558 So. 2d at 905. When the alleged fraudulent suppression occurred, Fondren was an employee of one of Kirkpatrick's principal business competitors, Ready Mix USA. (Fondren Dep. at 97-99, 110-112, 245.) Fondren met Ford for the first time when they discussed the available position at Kirkpatrick. (Fondren at 121-22.) At the time of the meeting, Fondren was merely an applicant for a position with the company. *See Bulmer v. Southern Bell Tel. & Tel. Co.*, 317 S.E.2d 893, 895 (Ga. Ct. App. 1984)

9

(finding that no special relationship existed between plaintiff as an applicant for employment and defendant as a prospective employer). Kirkpatrick had no fiduciary, confidential, or special relationship with Fondren that imposed upon it a legal obligation to disclose information that Fondren had not requested.

Kirkpatrick was not under a legal duty to disclose information to Fondren because the parties were dealing with each other at arms length. Alabama law recognizes that "'[w]hen the parties to a transaction are knowledgeable and capable of handling their affairs,' the obligation to disclose does not arise." *Norman*, 558 So. 2d at 905 (citing *Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621, 624 (Ala. 1986)). When both parties are intelligent and fully capable of taking care of themselves and dealing at arms length with no confidential relationship, no duty to disclose arises. *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559, 1570 (11th Cir. 1987). When looking at the relationship of the parties, Alabama courts look to the relative bargaining positions of the parties. *See State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998). "'Superior knowledge of a fact without more, does not impose upon a party a legal duty to disclose.'" *Id.* at 843 (citation omitted). Fondren came to the table with knowledge of business, including the concrete and building materials business. It is undisputed that Fondren had worked in the concrete industry for five years prior to her meeting with Ford. She was aware that not all businesses are profitable, as she had lost two previous jobs due to lack of profitability. (Fondren Dep. at 61-62, 77-78.)

Alabama law does not impose upon an employer a legal duty to guess what information may be important to every applicant to whom it offers a position. The law does not require an employer to disclose every detail about a job unless the information is requested or a special relationship exists between the parties. *See Norman*, 558 So. 2d 903. Nothing about the

10

circumstances of this case imposed upon Kirkpatrick the affirmative duty to disclose to Fondren all of the details of the Building Materials division's profitability, or its potential therefor, absent Fondren's specific request for the information. Because Fondren does not offer evidence on which a reasonable jury could find that Kirkpatrick had a duty to disclose the facts she claims were suppressed, her fraudulent suppression claim fails as a matter of law.

2. *Misrepresentation*

Fondren also attempts to cast her claim as one of affirmative misrepresentation. (Complaint ¶ 18.) Plaintiff's claim fails because she did not aver "the circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b). Fondren does not plead as untrue any statement made by Kirkpatrick to her. Fondren's misrepresentation claim fails in any event because she does not establish the elements of a misrepresentation claim. To state a claim of misrepresentation, a plaintiff must show: (1) that the defendant made a false misrepresentation; (2) of a material existing fact; (3) upon which the plaintiff reasonably relied; and (4) which proximately caused injury or damage to the plaintiff. *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998); *see also Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997) (holding that the "reasonable reliance" standard applies to all fraud cases filed after March 14, 1997). There is no evidence before the court that Ford misrepresented an existing fact. Fondren concedes that she was told that she would receive a bonus only if the Building Materials division made a profit. (Fondren Dep. at 125.) Because there is no evidence that this statement was false, plaintiff's fraudulent misrepresentation claim fails as a matter of law.

11

**B.      Sex Discrimination**

Fondren also claims that she was paid less than certain males because of her sex in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et. seq.* Fondren can prove her claim through the introduction of direct or circumstantial evidence. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Direct evidence of discrimination is "'evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption.'" *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Fondren has no direct evidence of discrimination. (Fondren Dep. at 165-166, 188-189, 190.) Therefore the court's analysis is governed by the burden-shifting analysis set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994).[8]

Under the familiar three-step, burden-shifting framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful

---

[8]     Fondren did not assert a claim under the Equal Pay Act. Unlike the Equal Pay Act, Title VII requires proof of discriminatory intent to establish a claim of disparate pay. *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 597 (11th Cir. 1994); *Meeks v. Computer Assoc. Int'l.*, 15 F.3d 1013, 1018 (11th Cir. 1994).

motives, in this case, discrimination based on sex. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *Chapman v. A.I. Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

      To establish a prima facie case of disparate pay under Title VII, a plaintiff must show "that she is female and her job was substantially similar to higher paying jobs occupied by males." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 598 (11th Cir. 1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992)). To make the comparison that defendant treated similarly situated employees outside her protected class more favorably, Fondren must demonstrate that she and the employees to which she refers are similarly situated in all relevant respects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). If a plaintiff fails to show that she is similarly situated in all relevant respects to her comparators, summary judgment is appropriate. *Id.*

      Fondren testified that she believes her comparators are the two prior Building Materials Managers, Griggs and Woolard, and any other male manager at Kirkpatrick who made more money than she did, including her supervisor. (Fondren Dep. at 154-157; 164-165.) However, Fondren conceded that she does not know how much these employees were paid or what their duties were. (Fondren Dep. at 165-66, 188-90; Moore Dep. at 39-40.) To support her contention, Fondren submitted the affidavit of Sharon Harvill, who offered the statement that

13

"[s]ome male managers who held equivalent and even lower positions to the position Deneise Fondren held were paid more than Deneise. This will include Yancy Myers, Ed Franklin, John Osterland and Jimbo Head, among others." (Harvill Aff. ¶ 5.)[9] However, Harvill did not identify the positions that these persons held, nor did she describe their duties. (*See id.*) Her conclusory statement that they held positions "equivalent and even lower to" the plaintiff is not sufficient to establish that Fondren's position was in fact "substantially similar" to the positions held by these individuals.

Kirkpatrick acknowledges that the salaries paid to the two prior Building Materials Managers, both of whom were men, were greater than the base salary paid to Fondren. (Defendant's Brief at 12.) Mike Griggs, who was Building Materials Manager from 1992 to 1994, earned $50,000 per year. (Roy Aff. ¶ 3.) Griggs previously worked for approximately twelve years as Market Manager for Winn Dixie, approximately two years as Educational Recruit for the USA Training Academy, and approximately three years as Sales Manager for a principal competitor of Kirkpatrick before he was hired as Building Materials Manager for

---

[9] Kirkpatrick moved to strike this portion of the affidavit of Sharon Harvill on the grounds that it is conclusory and not based on personal knowledge. *See* Fed. R. Civ. P. 56(e); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value."). Affidavits submitted in opposition to a motion for summary judgment must be based on personal knowledge. Fed. R. Civ. P. 56(e). Although the nonmoving party does not have to "produce evidence in a *form* that would be admissible at trial in order to avoid summary judgment," *Celotex*, 477 U.S. at 324 (emphasis added), the evidence must be "evidence that is admissible or that could be presented in an admissible form." *Denney v. City of Albany*, 247 F.3d 1172, 1190 n.10 (11th Cir. 2001) (citing *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996)). The court agrees that the Harvill affidavit contains conclusory allegations not shown to be based on personal knowledge. Although as comptroller for Kirkpatrick, Harvill may have knowledge of positions and salaries of people in the company, she has not shown that she has knowledge to make the conclusory assertion that the positions are "equivalent and even lower to" plaintiff's. Defendant's motion to strike is due to be granted. Even considering this affidavit, however, summary judgment is appropriate.

defendant. (Applic. of Griggs, R. at 26, Exh. I; Roy Aff. ¶ 2.) Griggs had an understanding of Kirkpatrick's products and brought several large masonry customers when he went to work for defendant. (Landress Dep. at 82-84.) Keith Woolard, who held the position from 1994 until 1997, was hired at an initial salary of $50,000 based on his prior experience in the purchase and sale of building materials. (Roy Aff. ¶ 4.) Woolard had a knowledge of Kirkpatrick's products, but did not bring to Kirkpatrick any customers from his prior business in North Carolina. (Landress Dep. at 84-85.) Fondren was hired in 1998 at a base salary of $42,000 (not including bonuses).[10] (Goudie Aff. ¶ 3; Fondren Dep., Ex. 2.) Plaintiff had three to four years experience selling building materials with Kirkpatrick and two years in a building materials department, part of the time as a manager, prior to her employment with Kirkpatrick as Building Materials Manager. (Fondren Dep. at 35-39, 75, 83, 99, 109-13.) Fondren had knowledge about color and stamping concrete, and she brought some customers to Kirkpatrick. (Landress at 82-84.)

Assuming without deciding that Fondren is similarly situated to male employees she claims received the higher compensation, she has not rebutted defendant's proffered reason for paying her a lower salary. Kirkpatrick has articulated several legitimate non-discriminatory reasons to explain the difference in pay. Plaintiff's salary was set by Jim Goudie, rather than by Bill Roy, who had determined the salaries of her alleged comparators. In setting Fondren's salary, Goudie considered that she had little prior management experience and no prior management experience in the concrete building materials industry. (Goudie Aff. ¶ 4.) Next, Goudie considered that Fondren was being offered a salary approximately $10,000 higher than

---

[10] It is undisputed that Fondren received bonuses in addition to her salary, although she did not receive a bonus based upon the profitability of the Building Materials division because a profit was not made in that division during her employment. (Fondren Dep. at 284-85, 287; Fondren Dep. At Ex. 2; Studdard Dep. at 31.)

the salary she had made at Kirkpatrick two years earlier. (Goudie Aff. ¶ 4.) Finally, Goudie also considered that, unlike prior Building Materials Managers, Fondren was hired when another level of management was in place over the Building Materials division. (*Id.*) Under the new structure, Fondren would report to the Sales Manager rather than to the President as prior Building Material Managers had done. (*Id.*; Weitman Dep. at 47-48, 67-68.)

"[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261, n.5 (11th Cir. 2001); *see also Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis"). The salaries of Griggs and Woolard, plaintiff's alleged comparators, were set by Bill Roy, the President of Kirkpatrick at the time they were hired. (Roy Aff. ¶¶ 2, 4.) It is undisputed that Roy no longer worked for Kirkpatrick when Fondren was hired in 1998. Fondren's salary was set by Goudie, the President of Kirkpatrick when she was hired as Building Materials Manager. (Goudie Aff. ¶ 2.) Fondren offers no evidence that the existence of different decision makers does not explain the difference in salaries.

Even if Fondren has produced sufficient evidence to create a genuine issue of material fact that Kirkpatrick's articulated reason that the discrepancy in salary is due to different decision makers is pretextual, her claim fails. The law of this Circuit requires that the plaintiff present "'sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of *each* of the employer's proffered reasons for its challenged action.'" *Chapman v. A.I. Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc) (emphasis added) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997)). Fondren's argument does not address

16

Kirkpatrick's other articulated reasons for its decision, including the different management structure that existed at the time she was hired as Building Materials Manager, the decision-maker's consideration that her salary represented an increase of almost $10,000 over her previous salary at Kirkpatrick, and the decision-maker's opinion that plaintiff had little prior management experience and no prior management experience in the concrete building materials industry. The court is "not in the business of adjudging whether employment decisions are prudent or fair." *Chapman*, 229 F.3d at 1030 (citations omitted). As long as Kirkpatrick did not set Fondren's pay based on a discriminatory reason, no federal law is violated. *See id*. Because Fondren has not offered evidence sufficient to create an issue of fact as to whether each of Kirkpatrick's legitimate, non-discriminatory reasons for paying her less than her predecessors is pretextual,[11] summary judgment is due to be granted on her Title VII claim.

---

[11] Fondren also contends that she was not given a country club membership or taken on ski trips like male managers and male salespeople. (Pl.'s Brief at 6.) Plaintiff, however, did not allege these facts in the complaint. (*See* Complaint.) Although Fondren's complaint contained a broad allegation that Fondren was discriminated against in "other terms and conditions of employment," that claim was dismissed without prejudice by Order entered August 28, 2000. Fondren did not seek to amend her complaint to assert these claims, and she cannot assert them for the first time in response to a motion for summary judgment.

## IV. CONCLUSION

After a careful review of all the evidence, the court concludes that no genuine issues of material fact exist herein, and defendant is entitled to judgment as a matter of law on all claims asserted by the plaintiff. An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 13th day of March, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge